Hempsal SNYDOR, Jr., Appellant,

v.

VILLAIN & FASSIO et COMPANIA IN-TERNAZIONALE DI GENOVA SO-CIETA REUNITE DI NAVIAGAIONE, S.P.A., Appellee.

William RANDOLPH, Appellant,

v.

CENTRAL GULF STEAMSHIP CORP. et al., Appellees.

Bert ROBINSON, Appellant,

v.

GRACE LINE, INC., Appellee.

Paisley GREEN, to his own use and to the use of Liberty Mutual Insurance Company, Appellant,

v.

POPE AND TALBOTT, INC., a body corporate, Appellee.

James R. MILES, Appellant,

v.

S.S. PRODROMOS et al., Appellees.

Oscar EADDY, Appellant,

v.

EMDER DAMPFERCOMPAGNIE AK-TIENGESELLSCHAFT et al., Appellees.

James MISLAK, Appellant,

v.

PLOUVIER MARITIME, N.V., Appellee.

Nos. 71–1208, 71–1473, 71–1477, 71–1478, 71–1496, 71–1497, 71–1678.

United States Court of Appeals, Fourth Circuit.

April 24, 1972.

Raymond J. Cardillo, Baltimore, Md., for appellant in No. 71–1473.

H. Carl Butler, Baltimore, Md., for appellant in No. 71–1477.

Franklin I. Freeman and William B. Ewers, Baltimore, Md., for appellant in No. 71–1478.

John J. O'Connor, Jr., Baltimore, Md., for appellant in No. 71–1496.

Joseph F. Lentz, Jr., Baltimore, Md., for appellant in Nos. 71–1497, 71–1208 and 71–1678.

Louis G. Close, Jr., Randall C. Coleman, Eugene A. Edgett, Jr., Phillips L. Goldsborough, 3rd, Baltimore, Md., A. Owen Hennegan, Towson, Md., Richard R. Jackson, Jr., Paul V. Niemeyer and Jesse Slingluff, Baltimore, Md., for appellees in Nos. 71–1208, 71–1473, 71–1477, 71–1478, 71–1496 and 71–1497.

David R. Owen, Baltimore, Md., for appellee in No. 71–1678.

Before HAYNSWORTH, Chief Judge, SOBELOFF, Senior Circuit Judge, and FIELD, Circuit Judge.

PER CURIAM:

Each of these seven cases involves a longshoreman employee of a stevedoring company who was injured on a pier or in a pier-based structure in the performance of his work. In each case the longshoreman instituted an action against the shipowner with the usual allegations of negligence and unseaworthiness of the vessel. Some of the cases were brought in admiralty, while others were instituted as actions at law. The district court took the position that the cases presented common "substantive" questions which could be determined only by the application of principles of maritime law. Basically, the "substantive" question in each case is whether the subject matter is a maritime tort which falls within the admiralty jurisdiction of the district courts. The district court 328 F.Supp. 71, concluded in effect that there was an absence of admiralty jurisdiction over the subject matter and accordingly dismissed the complaints.

On the basis of the recent decision of the Supreme Court in Victory Carriers, Inc. v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971), we conclude that the action of the district court in dismissing these cases was appropriate.

In *Victory Carriers*, the longshoreman, Bill Law, was the operator of a forklift owned by his employer. At the time of his injuries the forklift was carrying cargo to be loaded on a vessel owned by Victory Carriers, Inc., and was being operated by Law on the pier alongside the vessel. The injury resulted from the fall of a rack on the forklift which occurred during the course of its operation. Law instituted suit in the district court alleging both negligence and unseaworthiness. The district court entered judgment for the owner, holding that the doctrine of unseaworthiness did not apply to Law since he was not engaged in the loading process. The Court of Appeals for the Fifth Circuit reversed. Law v. Victory Carriers, Inc., 432 F.2d 376 (5 Cir. 1970).

The Supreme Court reversed the Fifth Circuit and held that admiralty jurisdiction does not extend to "pier-side accidents caused by a stevedore's pier-based equipment." The Court observed that the Admiralty Extension Act of 1948, 46 U.S.C. § 740, extended admiralty jurisdiction to include "all cases of damage or injury * * * caused by a vessel on navigable waters, notwithstanding that such damage or injury be done or consummated on land." The Court pointed out that the mere fact that a longshoreman was engaged in loading or unloading a vessel at the time of his injury did not necessarily bring him within the ambit of the Act, but that recovery in admiralty is limited to those situations where the injuries are caused by the ship, its crew or its appurtenances. Mr. Justice White, writing for the majority stated:

"In the present case, however, the typical elements of a maritime cause of action are particularly attenuated: respondent Law was not injured by equipment which was part of the ship's usual gear or which was stored on board, the equipment which injured him was in no way attached to the ship, the forklift was not under the control of the ship or its crew, and the accident did not occur aboard ship or on the gang plank." 404 U.S. 213, 92 S.Ct. 426.

An examination of the facts in the present cases indicates that each of them falls within the principles enunciated in *Victory* and, accordingly, the longshoremen plaintiffs had no maritime cause of action.

### No. 71–1208

Hempsal Snydor, a longshoreman, was injured on a pier when he was struck by a pier-based tractor owned by his stevedore employer. At the time he was struck, Snydor was bending down to pick up some straps and the tractor was pushing a barrel of rags from one end of the pier to another so that they could be loaded onto the vessel owned by the respondent. Since Sydnor was not injured by equipment which was a part of the ship's gear and since this equipment was in no way attached to the ship or under the control of the ship or its crew, there was no maritime cause of action.

### No. 71–1473

William Randolph was working in a railroad gondola car which was positioned on a pier alongside the S. S. GREEN BAY. He was injured when he was struck by the hook of a pier-based crane owned by the Maryland Port Authority which was suddenly dropped into the gondola car. Since the crane was operated by a fellow longshoreman and was in no way connected with or under the control of the ship or its crew, the district court properly dismissed the case.

### No. 71–1477

Bert Robinson, a longshoreman, was standing on a pier helping unload some pontoon hold covers. These pontoons cover the ship's hold and are usually stored on the deck; however, in this instance they were being stored on the pier. As the ship's boom lowered the pontoons, Robinson and another longshoreman grabbed each end and then guided the pontoons to the place on the pier where they were put on wooden chocks. As Robinson was guiding one

of the pontoons he tripped over a small piece of wood injuring him. At the trial of this case no evidence was offered as to the ownership of the piece of wood nor was any connection shown between it and the vessel. Robinson himself testified that the offending piece of wood had nothing to do with the unloading operation. Under these circumstances, the district court properly dismissed Robinson's complaint.

### No. 71-1478

■ Paisley Green worked on the second floor of a warehouse which had been constructed on a pier. His job on the day of the accident was to "spot" a palletized cargo that had been unloaded from a ship which was tied up alongside the pier. He was injured when a case of cargo fell from a stack and struck him. Green argues that his injury was caused by an appurtenance of the ship, i.e., defective cargo pallets. He further contends that "it was obvious that the cases had to have been improperly or insecurely glued together and that such condition had existed while the cases were on the vessel in question." We are unpersuaded by this theory advanced for the first time in the appellant's brief in this court. During a full trial on the merits he offered no evidence that the pallets were defective when they left the ship—a fact crucial to establishing a maritime cause of action under the Admiralty Extension Act. Indeed, at the most, the only proof adduced at trial concerning the cause of the accident indicates that the defect in the pallets was the result of the negligence of a forklift operator during the stacking of the pallets after they left the ship. The District Court was, therefore, correct in distinguishing Gutierrez v. Waterman Steamship Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963), for in that case, unlike the one under review there was evidence in the record that the cargo containers were defective before they left the ship. Since no personnel from the vessel were shown to have damaged the pallets, and the pallets were not defective when they left the ship, the complaint was properly dismissed.

### No. 71-1496

■ James R. Miles was employed as an operator of a grain elevator. Grain was transferred from the elevator into the hold of the S. S. PRODROMOS by means of a conveyor belt. Miles was injured when an explosion took place inside the control box as he threw a switch in an effort to restart the motor which drove the belt. While it is unquestioned that Miles was in the process of loading the vessel, he was not injured by equipment which was a part of the ship's gear or in anyway attached to the ship. Moreover, neither the grain elevator nor the conveyor belt was under the control of the ship or its crew, and the accident occurred not on the ship but on the pier. Therefore, his claim was properly dismissed by the District Court.

### No. 71-1497

■ Oscar Eaddy was injured while he was doing work preparatory to the loading of the M. S. ANNI NUBEL. A palletized cargo of barrels was to be loaded aboard the ship on the morning of Eaddy's accident. Many of the pallets supporting the cargo were not in good order and Eaddy and another longshoreman were to help place good pallets under any pallet considered to be too weak. Eaddy was also instructed to make sure that the barrels were placed securely on the pallets. While Eaddy was placing a barrel back on a pallet it broke causing three crowbars which were standing together between the barrels to fall and injure his foot. The defective pallet in question was not part of the ship's gear or cargo. No member of the ship's crew was present when the accident occurred and the forklift holding the pallet was not under the control of the ship or its crew. On these facts the district court properly dismissed the complaint.

No. 71–1678

■ The factual situation in this case is very similar to No. 71–1473. James Mislak was working in a railroad car on the pier. At the time of his injury, a pier-based crane owned by the Maryland Port Authority was unloading steel beams from the S. S. STAD GENT. The crane was being operated by an employee of the Authority and as the operator lowered one of the beams into the gondola car the operator caused the steel to swing and it caught Mislak's hand against the side of the car. Since the crane was not a part of the ship's gear or equipment and since it was being operated by an employee of the Authority and was not under the control of the ship or its crew at the time of the accident, there was no maritime cause of action.

Accordingly, for the reasons stated above we dispense with oral argument and affirm the judgments below.

Affirmed.